# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE E. MATHEWS, an Individual, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAKE FOREST PLACE, LLC, | ) | **Trial by Jury Demanded** |
| An Illinois Limited Liability Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Bruce E. Mathews, through his counsel of record, Michael J. Merrick of Merrick Law Firm LLC, and for his Complaint against Defendant states as follows:

### NATURE OF THE ACTION

1.      After retiring from a successful career in business, Plaintiff Bruce Mathews, now 91 years of age, started working for Defendant as a front desk concierge in its retirement community.  He loved his job and the people he interacted with, and it provided a way for him to earn a living and remain engaged during his senior years.  Mr. Mathews took his job seriously and did it well.  However, some managers came to believe that he was too old for the job and wanted a younger presence at the front entrance.  One of those managers falsely reported him for sleeping at his desk.  Despite Mr. Mathews' strenuous denial—and video footage which clearly contradicts the manager's report and shows that he was not asleep at his desk—Defendant fired him anyway allegedly based on the manager's uncredible report.  Defendant's stated reason is false.  Defendant fired Mr. Mathews because of his age.  He brings this wrongful termination action under the federal Age Discrimination in Employment Act and the Illinois Human Rights Act seeking make-whole relief including reinstatement, backpay and damages.

## JURISDICTION & VENUE

2.     Subject matter jurisdiction is premised on the federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claim under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. ("ADEA"), arises under federal law.  This Court has supplemental jurisdiction over Plaintiff's Illinois Human Rights Act ("IHRA") claim under 28 U.S.C. §1367.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as Defendant has employees and does business in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Plaintiff would have remained employed in this judicial district but for the unlawful employment practices alleged herein.  Plaintiff has properly exhausted administrative remedies.

## PARTIES

4.     Plaintiff Bruce E. Mathews ("Mathews" or "Plaintiff") is a United States citizen residing in Lake Forest, Illinois.  At all relevant times he was employed by Defendant in Lake Forest, Illinois.

5.     Defendant Lake Forest Place, LLC ("Defendant") is an Illinois limited liability company doing business as a retirement community in Lake Forest, Illinois.

## COMMON ALLEGATIONS

6.     After retiring from a successful business career, most recently as a Senior Vice President in an insurance brokerage firm, Mathews commenced employment with Defendant as a concierge on or about October 22, 1999.

7.     Mathews worked at the front desk which is adjacent to the front entrance of the building.

8. Mathews' job duties included admitting and greeting people at the front door, receiving deliveries, and performing various administrative functions.

9. Mathews used a phone and computer at the front desk to perform his job duties.

10. There is a video camera located in the front entry area of the building which records video of the entrance including the front desk where Mathews sat during his work shifts.

11. During the course of Mathews' employment, Defendant's management monitored Mathews' activities by viewing the video which was displayed on monitors in the office.

12. During Mathews' employment, Defendant's Director of Sales and Marketing frequently spoke with other management employees about Mathews. They talked about getting rid of him and replacing him with a younger employee whom they thought would provide a better presence at the front door.

13. The Director of Sales and Marketing also made jokes and derogatory comments about Mathews' age and frequently questioned, in apparent exasperation, whether he would retire soon.

14. In or about June 2019, Mathews' supervisor told Mathews that a human resources employee had seen him sleeping at his desk.

15. Mathews denied sleeping at his desk in June 2019.

16. Mathews did not sleep at his desk in June 2019.

17. During a meeting with Defendant's Human Resources Manager, Mathews requested to see video footage of the alleged June 2019 sleeping incident. The Human Resources Manager told him there was no video footage.

18. Upon information and belief, on or about September 5, 2019, Defendant's Director of Sales and Marketing told the Executive Director that Mathews was sleeping at his desk.

3

19.     On or about September 9, 2019, Defendant's Human Resources Manager asked the Director of Sales and Marketing if she would submit a written statement about what she had witnessed regarding Mathews sleeping at his desk.

20.     The Director of Sales and Marketing replied that she wanted to discuss the matter further with Defendant's Executive Director before she provided any written statement.

21.     Upon information and belief, the Director of Sales and Marketing refused to provide a written statement that she had observed Mathews sleeping at his desk in September 2019.

22.     On or about September 13, 2019, Mathew's supervisor gave him a written warning for allegedly sleeping at his desk.  The supervisor told Mathews that an employee had reported him but refused to disclose her name.

23.     Mathews denied sleeping at his desk in September 2019.

24.     Mathews did not sleep at his desk in September 2019.

25.     On or about October 9, 2019 Mathews sent a letter to Defendant's Human Resources Manager again denying the June and September allegations that he had been sleeping at his desk.  He also explained in the letter that "[d]uring the work day, as part of my job function, I write notes to residents, I also read, do paperwork and access a computer at my desk.  In order to perform these tasks, my eyes and head are frequently in a downward position.  It is easy to mistake this for sleeping."

26.     On or about October 21, 2019, Defendant's Executive Director advised Defendant's Human Resources Manager, other managers, and corporate Human Resources at Presbyterian Homes that he had received another report from the Director of Sales and Marketing that she had seen Mathews sleeping at his desk that afternoon.

4

27.     On or about October 23, 2019 the Director of Sales and Marketing told the Human Resources Manager what she had allegedly seen regarding Mathews sleeping at his desk.

28.     Upon information and belief, the Director of Sales and Marketing told the Human Resources Manager that: on October 21, 2019 at around 4:00 p.m. she was walking out a couple of prospective customers after a tour of the facilities; as the three of them spoke near the front door she observed Mathews at his desk with his head bobbing and his eyes closed; when she spoke louder Mathews' eyes opened and then closed again; when the couple left the building Mathews' eyes were still closed; when she said "Thanks Bruce," his eyes opened and he replied, "Oh ok."

29.     The Director of Sales and Marketing's oral statement is false.

30.     Upon information and belief, the Director of Sales and Marketing did not provide a written statement that she had observed Mathews sleeping at his desk in October 2019.

31.     On or about October 23 and 24, 2019, the Director of Sales and Marketing expressed to the Human Resources Manager and Executive Director that she did not want her name disclosed as the reporting witness.

32.     On or about October 24, 2019, the Executive Director, Human Resources Manager and Mathew's supervisor discussed reviewing video footage of the alleged sleeping incident before they spoke with Mathews about the allegation.

33.     Upon information and belief, Defendant's managers viewed the video footage before they met with Mathews.

34.     In the video footage Mathews is sitting upright at his desk the entire time.

35.     In the video footage Mathews' head is not bobbing.

36.     In the video footage the Director of Sales and Marketing and Mathews do not speak to each other.

37.     In the video footage Mathews does not appear to be asleep.

38.     The video footage contradicts what the Director of Sales and Marketing had reported to the Human Resources Manager.

39.     On or about October 24, 2019, Defendant's Human Resources Manager, another Human Resources representative and Mathews' supervisor questioned Mathews about the alleged incident.

40.     Mathews told them that he certainly was not sleeping on the job and that he thought someone was trying to get him fired.

41.     The Human Resources Manager then told Mathews that he was being suspended pending an investigation.

42.     Upon information and belief, Defendant did not conduct any legitimate investigation.

43.     On or about October 25, 2019, Mathews delivered a letter to Defendant's Human Resources Manager stating in part that "[t]here are many cameras at Lake Forest Place and one overhead at my work station.  I would like to see the video evidence that I was asleep at my desk on all the days cited in the verbal and written warnings."

44.     Defendant did not respond to Mathews' request to view the video footage.

45.     On or about October 29, 2019, Defendant's Human Resources Manager called Mathews and told him he could resign or be terminated.  Mathews responded that he wanted to speak with his family.

46.     On or about October 30, 2019, Mathews called Defendant's Human Resources Manager and told him that he would not resign and he again denied the allegations against him.

47.    A few days later Mathews received a letter from Defendant dated October 31, 2019 stating he was fired because "[y]ou were observed sleeping on the job on Monday, October 21ˢᵗ."

48.    Upon information and belief, at or about the time Defendant decided to fire Mathews Defendant investigated its Director of Sales and Marketing for alleged misconduct.

49.    Upon information and belief, Defendant terminated the employment of its Director of Sales and Marketing for alleged misconduct soon after Mathews' employment ended.

50.    Defendant's stated reason for terminating Mathews' employment is a pretext to hide unlawful age discrimination.

## COUNT I

## ADEA AGE DISCRIMINATION/WRONGFUL TERMINATION

51.    Mathews performed reasonably in his job in accordance with Defendant's legitimate expectations.

52.    Defendant terminated Mathews' employment because of his age.

53.    Defendant treated younger employees more favorably than Mathews.

54.    Defendant replaced Mathews with a substantially younger employee(s).

55.    Defendant terminated Mathews' employment in willful violation of the ADEA.

56.    As a proximate result of Defendant's unlawful conduct, Mathews suffered damages.

## COUNT II

## IHRA AGE DISCRIMINATION/WRONGFUL TERMINATION

57.    Plaintiff incorporates by reference paragraphs 1 through 55 as though fully set out in this Count II.

58. Defendant's termination of Mathews because of his age is also a violation of the IHRA.

59. As a proximate result of Defendant's unlawful conduct, Mathews suffered damages.

**WHEREFORE**, Plaintiff respectfully prays for judgment in his favor and against Defendant on all counts and for the following make-whole relief:

A. Reinstatement to his position as concierge at Lake Forest Place;

B. Preliminary and permanent injunctions enjoining Defendant from unlawfully discriminating or retaliating against Plaintiff and interfering with his employment;

C. Lost past and future wages and benefits in an amount to be proven at trial;

D. Compensatory damages in an amount to be proven at trial;

E. Liquidated damages;

F. Interest;

G. Other equitable relief including back pay, and front pay as appropriate;

H. Plaintiff's reasonable attorneys' fees and costs incurred herein; and

I. For such further relief that the Court may deem just and equitable.

### <u>JURY DEMAND</u>

Plaintiff demands trial by jury.

BRUCE E. MATHEWS

By: <u>/s/Michael J. Merrick</u>
*Attorney for Plaintiff*

Michael J. Merrick
Merrick Law Firm LLC
150 N. Michigan Avenue, Suite 2800
Chicago, Illinois 60601
Tel. (312) 269-0200; Fax (312) 269-0800
merrick@merricklawfirm.com
Attorney No. 6229849